Good morning, ladies and gentlemen. We'll take the cases in the order in which they are presented. The first case for oral argument is AGUILAR-GARCIA v. RIDGE. Counsel? Good morning, Your Honors. Robert DuPont appearing on behalf of Sylvia Aguilar-Garcia. Your Honor, the case we have here before us today deals with a failure of an administrative officer to properly examine evidence and render a correct decision as to whether Ms. Aguilar is subject to a reinstatement of deport statutes. We are claiming an abusive process, denial of ability to present evidence, manufacture of false evidence that's been placed into the record, and a mistaken ruling on her manner of entry. We think that this case speaks loudly not only on the actual failure of this officer to render a correct decision, but really points to a systemic problem as to whether officers who are also involved in arranging for detention of these individuals are really capable of acting as a fair arbiter and deciding the elements of the statute in applying a reinstatement of deport. Well, is there – let's see. I think there's no dispute that – is it Ms. Aguilar, is that, or is it Ms. Garcia? Aguilar-Garcia. Okay. Ms. Aguilar-Garcia was – had been ordered deported or removed. And albeit that there was an appeal pending, apparently she self-deported. Is that correct? That's correct. Under the statute, her departure was considered a self-deport. Okay. Then when she reenters, her reentry would be illegal, would it not? Your Honor, she had a visa. But that's not the consent of the attorney general that is required. Well, the consent of the attorney general – and one thing I'd like to remind the Court is we're not dealing with a very sophisticated individual. Well, I don't think the law takes that into account. I guess what I was getting at is what would – given those apparent facts that are not in dispute, what would a hearing officer decide? He can't change those, can he? Well, the facts are is that we have a person who has presented her visa. She's presented herself for inspection. She thinks she has an appeal pending. So there's a big question mark as to whether she thinks she's breaking the law. And she is relying on an INS officer at the port of entry in Los Angeles. But is it – does it matter whether she thinks she's breaking the law? In a way, it does, because there's so many references here to criminal cases which are being cited, dealing with people who have an intent to enter, knowing they have an outstanding deport order and an associated aggravated felony, which is not the case here. Well, you know, I think the point is – Is there any authority or any case that would help with the argument that she's breaking the law? Is there any argument that it matters that she thought she had a right to come back? Your Honor, I don't have a case on point on that issue. What I do want to bring to the fore is that there – this person did present herself for inspection. She had a – it wasn't a sneaky entry. Well, I mean, I don't think there's any doubt about the facts. I think we understand that she had the multiple visa or whatever you have it, that ordinarily she would have been able to come into the country. But she was subject to a statute that says you have to get the consent of the attorney general. Now, undoubtedly, she had no idea about that, and undoubtedly she didn't intend to break the law. I don't think there's any dispute about any of that. It's only a legal question. Okay. Well, then we go to the issue of consent. The attorney general operates through INS officers. That's the contact with the public. Well, let me cut to the heart of that question. Do you have any case or any authority that suggests that the statute that says you need to get the consent of the attorney general to reenter is satisfied when an INS officer allows you to come into the country without knowledge or with knowledge that you have been that you're subject to this kind of an order? Is there any authority for that? My recollection is that we've had cases that say that's not good enough. But I would be happy to have you tell us that there is a legal way to get to your conclusion. Well, I don't have a I don't have an authority on that. Did she ever pursue an ineffective assistance of counsel claim based on her statement that her lawyer had told her she didn't need to appear at the original deportation hearing? I believe with the passage of time that's not available to her at this point. Is there any way that the INS can be required to consider the application for I guess it's the I-212 application that she has? Is that the one for adjustment status based on, I guess, her mother and her daughter are both U.S. citizens? At this point, perhaps through use of a 212H waiver, which would have to be applied for overseas. So it would require a removal of the individual of service of the five year bar of reentry and then an application for a waiver. Where is she now? She's been in detention since October 2002. She's at a holding facility in Los. I think it's Las Vegas, Nevada. She's deported. Does she have what she can reapply for admission after five years? Is that the situation? Yes, she should be able to to reapply. And she's lost two years already that she could have been earning on five. Yes, that's correct. And that kind of brings us to my second point. Her deport, her actual deport was kind of self-inflicted in that she applied for asylum when she would have been qualified for legal permanent residency within the year. And she was admitted by an agent of the attorney general. She was given employment authorization. She was, her application for legal permanent residency was accepted. And the actual proceeding in which she had suffered a reinstatement of the deport was what she anticipated to be a adjustment interview in which they would review her records and ostensibly find her qualified and give her an approval stamp and let her go on about her business. So that led to, you know, that kind of led to the issues that came up in terms of whether the reinstatement hearing was a fair proceeding. And first, it was a hearing conducted by surprise. No one was prepared to defend a claim of reinstatement. She had her passport and employment authorization, two significant issues that would prove that she had a lawful reentry taken from her. And then she was being encouraged to sign English language, she's a Spanish speaker, a statement stating that she would be executed now. This problem with this is suppose she had been given all the due process. She should have been given. I suppose she'd had a lawyer there. She'd had time to prepare the answers. There are three requirements for the deportation reinstatement. One, that she not be a citizen, two, that she had been deported and three, that she reentered without the consent of the attorney general. Are there any factual disputes with respect to any of those three issues? How could she have been helped? I think unless you have a case to the contrary, we're required to find prejudice if there was a denial of due process and the hearing wasn't fair. If there are no factual disputes, how was the unfair hearing in any way prejudicial to her? Well, I think when we looked at the exact language of the INA241A5, the statement is if the attorney general finds that an alien has reentered the United States illegally after having been removed. And I think there isn't that a legal that's a legal legal issue, isn't it? Whether she entered illegally. It's not a question of I mean, we assume that she came in by whatever the record, the other factual things we can assume she came in by airplane through Los Angeles, I guess. But she came in with a regular visa. And the question is, is that coming in legally when you've been deported and you need the consent of the attorney general? If it is, she wins. If it's not, she loses. But there's no nothing that could have been brought out of the hearing. It's a legal issue. Unless you have something some something else to say. Well, I guess that's part of the point is here we have these administrative officers who need to find these elements and and make a legal conclusion. And it's our position that these officers simply aren't capable of drawing that conclusion correctly. Let me go back to Judge Wardlaw's question to you about she tried to file a 212 or when did she file the 212? The 212 waiver was submitted at the time of her adjustment interview. Her adjustment interview? Yes. And it was never ruled on or did they rule they had no jurisdiction? I believe it was just never considered. They just jumped into the reinstatement of the deportation. Is there anything productive that could be gained from remanding for a reconsideration to consider the I-212? Yes, Your Honor. I believe we can remand if the Attorney General could exercise its discretion whether to grant his waiver and allow this individual to adjust. Can a waiver be granted if you are subject to the reinstatement of a deportation order? Is there authority to do that? I believe so, Your Honor. Thank you, counsel. Thank you. Please, Court. Good morning, Your Honor. Patrick Sandhu on behalf of the Respondent. Your Honor, we would ask the Court to affirm the reinstatement order and deny the petition for review. As has been discussed, the narrow question before the Court is whether or not the reentry by the Petitioner was illegal for purposes of the reinstatement statute. And as we've set forth in our brief, it's fairly clear that her entry via a visa after her previous deportation would not constitute, by operation of law, a legal entry, given the statutory language requiring consent for her to reapply for admission within that five-year period. So by operation of law ---- Are they told that they can only come back with a consent of the Attorney General and not with a visa or not with a consent of an INS official at the border? Your Honor, there is a specific form that is provided to the alien when they're deported. In this case, however, because she's self-deported, she ---- it's not clear whether she got that form. But the notice is provided in the statute and in the regulations requiring consent. And that's under the ---- under Supreme Court case law, that's sufficient. But there is a form that's also provided specifically to the individual alien. How does one who ---- how would she have gone about getting consent from the Attorney General? She would have had to have gone to the United States consulate in Guatemala and applied for that, specifically filling out that form and applying for that consent. And it would have been ---- that would have been, as I understand it, would have been transferred to the INS, and they would have ruled on that as a matter of discretion to allow her back into the country. It's a five-year bar, so she would have to have that consent if she were going to reenter within that five-year period. She actually came in one week after her deportation. Your Honor, as far as ---- But before that, does the hearing officer or the INS or the BIA or anybody have authority to grant a waiver of this if you have entered illegally unknowingly and if you've self-deported unknowingly? Can that be waived after you've reentered when you discover you've got a problem? No, Your Honor. It would have to be obtained before the reentry. What's the authority for that? Your Honor, if you look at the statutory language, 8 U.S.C., 1182, 89A, and III, I think it's cited in our briefs at some point. What does it say? It essentially requires the individual to apply for consent. If you look at footnote 10, Your Honor. Footnote 10 of what? Page 16, footnote 10 of our brief, Respondent's brief. We set forth that the exception to the bar to admission would apply for someone who, prior to the date of their reembarkation at a place outside the United States, applies for this. That's in footnote 10. So she would have to get the consent. And that's what the case law, you know, that would sort of turn the logic upside down, if individuals could do that after they illegally reenter the country. Because, obviously, you know, for example, the criminal statute would, in essence, wouldn't make any sense if they could illegally reenter and then sort of knock before time gain consent of the Attorney General. Well, that's true. You're supposed to obtain consent from the Attorney General and then you're allowed to reenter. That doesn't necessarily mean that the Attorney General is without authority to say, well, this is a case in which justice I know that may not be a word generally used. But the justice may require giving somebody a waiver. And it would not be unthinkable that the Attorney General could be given that authority. Well, Your Honor, let me also point out one thing, which is that that waiver, just like the adjustment of status relief itself, it does constitute relief. And so if the reinstatement order I think here is clearly proper and it does bar reliefs, this Court recently decided a case that cited under Padilla, which involved a very similar crack pattern, and which found that that relief of adjustment status was not available because of the reinstatement language. Similarly, the adjudication of the IG-12 waiver, I think, is basically very clearly relief. You're seeking relief from the bar. And so that would be precluded. I don't think that, you know, that the Attorney General or delegates of the Attorney General would exercise discretion to grant that application in light of that bar. So I don't think a remand in that sense would be appropriate. So you say the Attorney General could not say to somebody who self-deported, came back without any idea that he was doing anything that caused any legal problem. And the Attorney General thought this was really a pretty good fellow. Maybe he gave us information about Iraq, for instance, where the weapons were. The Attorney General would have no authority? I don't want to represent that. I mean, I don't want to say that the Attorney General can't do anything. I'm saying that by operation of the reinstatement statute, she appears to be barred from any form or is barred from any form of relief. Now, IG-12 waiver falls within, clearly seems to fall within that category for immigration relief. Now, other things the Attorney General could do, perhaps. I mean, but I don't want to speak on that or represent that. Clearly, a remand for the IMS to adjudicate the IG-12 waiver, I think, is inappropriate given the statutory language, and she's barred from relief. If Your Honors have no more questions, that's all I have. Thank you, counsel. Thank you. Is there any rebuttal? No. The case just argued will be submitted. Next case on the calendar is United States v. Guzman.
judges: Reinhardt, Thompson, Wardlaw